**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BAILEY ENGINEERS INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **2:11-cv-00063** |
| **v.** | ) |
| | ) |
| **JST ACQUISITION COMPANY, L.L.C.,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM OPINION AND ORDER OF COURT</u>

Presently pending before the Court for disposition is the DEFENDANT"S MOTION TO

DISMISS COMPLAINT (Doc. No. 11), with brief in support (Doc. No. 12) filed by Defendant

JST Acquisition Company, L.L.C. ("JST" or "Defendant").  Plaintiff Bailey Engineers, Inc. filed

a Response in Opposition (Doc. No. 15), and Defendant filed a reply brief (Doc. No. 16).

Accordingly, the motions are now fully briefed and ripe for disposition.

### Background

On August 30, 1996, Plaintiff and PVS Chemicals, Inc. ("PVS"), Defendant's

predecessor-in-interest, entered into an Operating Agreement to organize and manage a joint-

venture, Bailey-PVS Oxides, L.L.C. ("BPO"), a Michigan limited liability company that the

parties co-own as fifty percent (50%) members.  PVS transferred its membership interest in BPO

to Defendant in 2002.

Thereafter, on August 6, 2010, representatives of Plaintiff and Defendant met to discuss

BPO.  At the meeting, Defendant requested that Plaintiff consent to the voluntary dissolution of

BPO, and Plaintiff disputed whether voluntary dissolution was permissible under the terms of the

Operating Agreement.  Defendant then stated that it would seek to dissolve BPO and Plaintiff

advised that it would dispute whether sufficient ground existed for the dissolution.  To settle this

dispute, Defendant initiated an arbitration proceeding with the American Arbitration Association on January 4, 2011.

The Operating Agreement, Article XI, outlines the procedures that a party must follow to dissolve the company. The Operating Agreement also contains a provision for the "Settlement of Disputes," which mandates that the parties arbitrate any dispute that arises as follows:

> **Section 13.1—Settlement of Disputes.** "If any dispute or difference shall arise among the Members touching on any clause, matter or thing contained in this Operating Agreement or the operation or construction of this Agreement, any matter or thing in any way connected with this Agreement or the rights, duties or liabilities of any party under or in connection with this Agreement, then and in every such case, the dispute or difference shall be referred to . . . arbitration proceedings . . .

(Doc. No. 4-1 at 22-23). The parties disagree as to whether this provision governs their dispute over the dissolution of BPO.

On January 18, 2011, Plaintiff initiated this diversity action by the filing of a two-count complaint (Doc. No. 1), seeking declaratory and injunctive relief. Plaintiff avers that Defendant improperly sought dissolution through an arbitration proceeding filed with the American Arbitration Association ("AAA"), which is allegedly outside the context of the Operating Agreement. Moreover, Plaintiff claims that Defendant initiated that proceeding, "despite failing to comply with the contractual notice of intent to dissolve and affording Bailey the option to acquire JST's interest in BPO." (Doc. No.1 at 4).

Plaintiff also alleges that AAA lacks jurisdiction over the Arbitration Proceeding. In sum, Plaintiff contends as follows: (1) "Bailey never contracted with JST, as successor to PVS under the Operating Agreement, to arbitrate claims with regard to dissolution of BPO under Michigan statutory and common law;" and (2) "under the Operating agreement, the parties contractually limited their ability to obtain dissolution of BPO, waiving the right to seek judicial (or tribunal)-ordered dissolution of the company." (Doc. No. 1 at 6-7). Thus, as Plaintiff claims,

a separate non-arbitration procedure contained within the operating agreement governs dissolution of the company.

On March 3, 2011, Defendant filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Defendant contends that the Complaint must be dismissed because the parties agreed to submit "any dispute or difference . . . touching on any clause, matter or thing contained in this Operating Agreement or the operation or construction of this Agreement, any matter or thing in any way connected with this Agreement . . ." to arbitration. Defendant also alleges that the operating agreement "'touches on' every issue raised in [it's] Arbitration Demand, explicitly addressing the dissolution of the partnership, management obligations, and the requirements of the Michigan Limited Liability Company Act." (Doc. No. 12 at 2).

## STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiently of the complaint filed by a plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (207) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a ***plausible*** claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

Thus, after *Iqbal*, a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court must separate the factual and legal elements of the claim. *Id.* Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id.* at 210-211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* at 211 (citing *Iqbal* 129 S. Ct. at 1949). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal* 129 S. Ct. at 1950).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Id.* at 211. That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and the requirements of Fed. R. Civ. P. 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). Fed. R. Civ. P. 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is

entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted).

Additionally, the Supreme Court did not abolish the Fed. R. Civ. P. 12(b)(6) requirement that

"the facts must be taken as true and a complaint may not be dismissed merely because it appears

unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits."

*Phillips,* 515 F.3d at 231(citing *Twombly*, 550 U.S. at 553).

## LEGAL ANALYSIS

Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-10, in order to determine

whether there is an enforceable arbitration agreement between the parties which would compel

arbitration and dismissal of the present action, a court must consider: (1) whether a valid

agreement to arbitrate exists between the parties; and (2) whether the specific dispute falls within

the substance and scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529,

532 (3d Cir.2005) (citations omitted). The FAA also establishes a policy "favoring arbitration,

requiring that courts rigorously enforce arbitration agreements." *Shearson/American Exp., Inc.*

*v. McMahon*, 482 U.S. 220, 226 (1987).

Here, the Court finds and rules that the Operating Agreement contains a valid agreement

to arbitrate, and that the present dispute falls within the scope of that agreement. It is undisputed

that § 13.1 of the Operating Agreement reflects a broad agreement to arbitrate. The essence of

the current dispute is the dissolution of BPO. Article XI of the Operating Agreement provides

for the dissolution procedures that the parties must follow. The Operating Agreement provides

that "***any*** dispute or difference . . . touching on ***any*** clause, matter, or thing contained in [the

Agreement] . . . shall be arbitrable." (Doc. No. 4-1 at 22-23). Similarly, in the AAA proceeding

JST is seeking a determination of "the rights, duties or liabilities of any party under or in

connection with [the Operating] Agreement." Pursuant to the Operating Agreement, "every such

case" shall be referred to arbitration.   In sum, the Operating Agreement provides for dissolution procedures, and contains a broad arbitration clause.  The current dispute falls within the substance and scope of the parties' agreement to arbitrate their disputes.


## CONCLUSION

In accordance with the foregoing, the DEFENDANT"S MOTION TO DISMISS COMPLAINT (Doc. No. 11) filed by Defendant JST Acquisition Company, L.L.C. will be **GRANTED** in its entirety.

An appropriate Order follows.



McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BAILEY ENGINEERS INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **2:11-cv-00063** |
| **v.** | ) |
| | ) |
| **JST ACQUISITION COMPANY, L.L.C.,** | ) |
| | ) |
| **Defendant.** | ) |

<u>Order of Court</u>

AND NOW, this 19th day of April, 2011, for the reasons set forth in the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** that the

DEFENDANT"S MOTION TO DISMISS COMPLAINT (Doc. No. 11) ) filed by Defendant

JST Acquisition Company, L.L.C. is **GRANTED**.  It is further **ORDERED** that all other

outstanding motions are **DENIED AS MOOT**.  The clerk shall docket this case closed.

BY THE COURT:

<u>/s/ Terrence F. McVerry</u>
United States District Court Judge

Cc:
John M. Smith
Email: jmsmith@smithbutzlaw.com

Brendan A. O'Donnell
Email: bodonnell@smithbutzlaw.com

Brian A. Lawton
Email: blawton@smithbutzlaw.com

Ronald W. Crouch
Email: rcrouch@mcguirewoods.com

Matthew Monsour
Email: mmonsour@mcguirewoods.com